# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**DEBORAH CUMMINGS,**            )

    **PLAINTIFF,**              )

**VS.**                          )     2:12-cv-2798-JHH

**TARGET STORES, INC.**          )

    **DEFENDANT.**              )

## MEMORANDUM OPINION

The court has before it the Motion (Doc. #26) for Summary Judgment filed by Defendant Target Stores, Inc. ("Target") on May 23, 2014. Pursuant to the court's order (Doc. #28) of May 28, 2014, the Motion (Doc. #26) for Summary Judgment was deemed submitted, without oral argument, to the court for review as of July 3, 2014.

## I.     Procedural History

Plaintiff Deborah Cummings commenced this action in the Circuit Court of Jefferson County, Bessemer Division on July 16, 2012 asserting claims related to a slip and fall in the Target store on Promenade Parkway. (*See* Doc. #1, Exh. C). On August 24, 2012 Defendant Target removed the action to this court under diversity and supplemental jurisdiction. (*See* Doc. #1, ¶¶ 12, 19). Target now seeks summary judgment in its favor, asserting that no genuine issue of material fact exists and that Defendant Target is entitled to judgment as a matter of law.

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the Motion (Doc. #26) for Summary Judgment. On May 23, 2014, Defendant submitted evidence (Doc. #26, Exhs. A-F)[1] in support of the Motion (Doc. #26) for Summary Judgment and also filed a supporting brief (Doc. #27). Plaintiff Deborah Cummings filed a brief (Doc. #34) in opposition to Target's motion for summary judgment on June 26, 2014, and on the same date filed evidence[2] in support of the opposition. On July 3, 2014, Target filed a final reply brief (Doc. #35) in further support of its motion for summary judgment.

## II.   Standards for Evaluating a Summary Judgment Motion[3]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[1] Defendants filed: Plaintiff Deborah Cummings's deposition transcript, with exhibits (Exhibit A); the declaration of Target Executive Team Lead-Human Resources Kevin Patterson (Exhibit B); Target representative Katie Crosslin's deposition transcript, with exhibit (Exhibit C); declaration of Target Guest Services Team Lead, Vinanatta Patterson (Exhibit D); Kevin Patterson's deposition transcript (Exhibit E); and John Cummings's deposition transcript, with exhibits (Exhibit F).

[2] Plaintiff filed: Defendant's Answers to Plaintiff's Interrogatories (Exhibit 1); a Guest Incident Report (Exhibit 2); Defendant's Responses to Plaintiff's Requests for Production (Exhibit 3); a Team Member Witness Statement (Exhibit 4); and Defendant's Supplemental Responses and Objections to Plaintiff's Interrogatories (Exhibit 5).

[3] Federal Rule of Civil Procedure 56 was amended on December 1, 2010. However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56 Advisory Committee's Note (2010 Amendments).

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary

judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue

in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### III.  Relevant Facts[4]

####   A.  The Incident

On August 14, 2010, Deborah Cummings, a 55 year old female, went to the Target store in Bessemer, Alabama with her husband John. (*See* Doc. #27, ¶¶ 1-2).

---

[4] Where the facts are in dispute, they are stated in the manner most favorable to Plaintiff, the non-moving party. *See Fitzpatrick*, 2 F.3d at 1115.

At 12:59 pm, Deborah and John checked out and walked to the area of the store known as Food Avenue to purchase popcorn. (*See id.*, ¶ 3).

Food Avenue contains a concession area and a long counter where guests get their fountain drinks from a drink and ice machine. (*See id.*, ¶ 4). An absorbent black mat is located on the floor in front of the drink machine as a precautionary measure to reduce any slip hazard from spills, trash, or debris.[5] (*See id.*). At 12:59:34 pm, Plaintiff walked without incident through the area in front of the drink machine where she subsequently fell. (*See id.*, ¶ 5). From 1:00:08 pm until 1:00:59 pm, John Cummings stood in the middle of the black safety mat; he did not look at the floor while standing there.[6] (*See id.*, ¶ 6).

After getting her popcorn, Plaintiff joined her husband and walked past the drink station toward the store exit at approximately 1:00:59 pm, passing a second time over the area where she would fall but without incident. (*See id.*, ¶ 7). At approximately 1:01:04 pm, Plaintiff turned around and walked back toward the concession area to put salt on her popcorn. (*See id.*, ¶ 8). She was not watching her

---

[5] The drink machine in Food Avenue was serviced one month before the incident, and the machine's maintenance history does not reflect any pattern of leaks or ice bouncing out of the drink tray. (Exh. C at 164-166).

[6] Target contends that John Cummings looked at the floor while standing on the black mat. (Doc. #27, ¶ 6). Because this fact is in dispute, it is stated above in the manner most favorable to Plaintiff. (*See* Doc. #34, ¶ 6).

feet but was focused on eating her popcorn. (Exh. A at 76-77). A few seconds later, she slipped and fell. (*See* Doc. #27, ¶ 8). She did not want an ambulance called, and walked out of the store without assistance. (Exh. D, ¶ 10).

John Cummings noticed a "spot of water" close to his wife that was no bigger than a coaster, which he pointed out to her. (*See* Doc. #27, ¶ 7). Plaintiff described the liquid as "a little bit of water" containing some melting ice on the tile floor. (*See id.; see also* Exh. A at 66). However Plaintiff disputes that the liquid and ice described as such encompasses the totality of the substance or the full amount of liquid and ice in her proximity when she fell. (*See* Doc. #34, ¶ 7). When asked if she saw single or multiple puddles, Plaintiff responded: "I don't really know, but it had to be more than one because of my pants, my capris and then up here (indicating). … When I glanced back (indicating), I could see one little piece [of ice], but the other little water pud -- water -- little puddles . . . " (Pl. Dep., Exh. A at 63-64, 74; Exh. F-21). Plaintiff did not see any shopping cart tracks, brown dirt marks, streaks in the liquid, or any other signs that the spot of water and/or ice had been on the floor any length of time. (Exh. A at 73; J. Cummings Dep., Exh. F at 28). Neither Plaintiff nor her husband knows where the liquid and/or ice originated or how long it may have been on the floor. (Exh. A at 92-94; Exh. F at 28-29). Target has no knowledge of the origin of the liquid either. (Crosslin Dep., Exh. C at 194-196).

## B.	Target Training and Instructions

All Target Team Members (employees) receive training and instruction to be mindful of the conditions of the premises, look for hazards on the floors or in the other fixtures and equipment of the store, and either take immediate action to correct the hazard or call for assistance. (K. Patterson Decl., Exh. B at ¶ 10). They are also trained to monitor the floor to maintain safe conditions for guests and employees, and employees are tested at least once a year to demonstrate that they know how to handle spills correctly. (Exh. C at 35; Exh. D, V. Patterson Decl. at ¶ 6). Target trains its employees to have a heightened awareness of spills of liquid, as well as debris and trash. (Exh. C at 176). Target maintains no specific inspection schedule or inspection log, requiring instead that "[a]ll Target employees on an ongoing basis inspect their departments for the purpose of identifying and correcting any conditions that might present a risk to guests and/or team members, as well as for general cleaning purposes." (Exh. 1, Response to No. 7; *see also* Doc. #34 at 7, ¶¶ 15, 16, 17, 18).

Target Team Members are reminded in team meetings every day to provide a safe and secure environment for guests and employees and to be mindful of things that could potentially cause harm. (Exh. C at 182-183). However, the manager of the

store, Katie Crosslin testified that she was unable to specifically recall whether she met with the managers on the day of injury before the injury occurred. (Exh. C at 62).

As a Target manager, Kevin Patterson monitored the Food Avenue each time he walked through the area to ensure that it was up to Target standards. (*See* K. Patterson Dep., Exh. E at 15-16). At approximately 12:52 pm on the date of the incident, Kevin Patterson walked down the aisle through Food Avenue, just beside and parallel to the black floor mat in front of the drink machine. (Exh. B, ¶¶ 4, 9; Exh. E at 15). Patterson does not have a specific mental image of walking through that area, but he is confident that he adhered to his personal practice of scanning the area to detect any untidiness or safety concerns, including checking for anything visible on the floor. (Exh. B, ¶ 9; Exh. E at 9, 12, 17). Patterson did not see any liquid on the floor beside the mat in front of the Food Avenue drink machine, or he would have immediately stopped to guard the spill and have it cleaned up. (Exh. B, ¶ 10; Exh. E at 16).

There is no evidence that prior to Plaintiff's fall at the Bessemer store that there was any pattern of liquids or ice making their way onto the tile floor beyond the black mat in front of the drink machine in Food Avenue. (Exh. B. ¶ 8; Exh. C at 190). However, the surveillance video of the area where Plaintiff fell revealed that in the

20 minutes prior to Plaintiff's fall, up to 80 people traversed or otherwise occupied the area.[7]  (Exh. A-18).

Katie Crosslin, the Leader on Duty ("LOD") at the Bessemer store on the date of the incident, made regular rounds and canvassed all areas of the store at least once an hour, including the front end.  (Exh. C at 9, 169-170, 173).  On that date, Crosslin walked through and canvassed Food Avenue with high frequency, with an awareness of whether there was anything on the floor that might be in a guest or employee's way. (Exh. C at 170-172).  She does not know of any evidence, however, that anyone who works for Target *directly* inspected the floor where Cummings fell during business hours prior to the fall.  (Exh. C at 156).

Target's Guest Services Team Lead, Vinanatta ("Venni") Patterson,[8] along with other Target employees, also walked through Food Avenue periodically to monitor and make certain everything was neat.  (Exh. D, ¶ 5).  If Vinanatta observed anything spilled on the counter or floor, she would direct the employee at the Target Café to clean up the spill.  (Exh. D, ¶ 5).  In fact, approximately eight minutes prior to Plaintiff's fall, Vinanatta went to provide cash to the cashier midway down the check

---

[7] Crosslin testified that it was no more likely that liquids or ice may be on the floor in the concession area after lunch or after a rush of users than at other times during the day.  (Exh. C at 88-89).

[8] Vinanatta was the supervisor responsible for the front end of the store on the date of this incident.  (Exh. C at 32-33, 35).

lanes.  (Exh. A-18 at 12:53 pm; Exh. C, ¶ 7).  From that location, Vinanatta did not see any spill in Food Avenue; however, she did not specifically inspect the floor.[9] (Exh. D, ¶¶ 7, 8; *see also* Exh. A-18).  Had she noticed any spill, she would have immediately addressed it.  (Exh. D, ¶¶ 7, 8).

Plaintiff contends that the Target Team Members closest to where she fell – one or more cashiers in the check lanes – should have been able to see the small spot of water.  (Exh. A at 90).  She could not place any individual cashier, however, or estimate the distance between where she fell and where they were working.  (Exh. A at 79).

**IV. Applicable Law and Analysis**

    **A. The Negligence Claim and Target's Responsibility to Invitees onto its Premises**

A premises owner such as Target has a duty to "exercise ordinary and reasonable care to keep [its] premises in a reasonably safe condition with respect to invitees."  *Cook v. Wal-Mart Stores, Inc.*, 795 F.Supp.2d 1269, 1273 (M.D. Ala. 2011).  A retailer "is not an insurer of the customers' safety but it is liable for injury only in the event [the storekeeper] negligently fails to use reasonable care in

---

[9] The surveillance video reveals that when Patterson was not with a guest during the time in question, she was traversing or near to the area where Plaintiff would ultimately fall. (Exh. A-18).

maintaining [its] premises in a reasonably safe condition." *Id.* (*quoting Dolgencorp, Inc. v. Hall*, 890 So.2d 98, 101 (Ala. 2003) (internal quotations omitted)). That is, actual or constructive notice of a potentially hazardous condition must be proven before a premises owner can be held responsible for an injury on its property. Plaintiff does not dispute that this is the operative law in this case, and focuses her argument on the contention that Target had *constructive* notice of an unsafe condition on its premises. (*See* Doc. #34 at 13-23).

Constructive notice is established from evidence that a hazard was present for a sufficient period of time such that notice can be imputed on the premises owner. *See Cook*, 795 F.Supp.2d at 1273; *see also Richardson v. Kroger Co.*, 521 So.2d 934, 936 (Ala. 1988) and *S.H. Kress & Co. v. Thompson*, 267 Ala. 566, 570 (1957). The nature of the liquid on the floor can be used as evidence to indicate how long it had been on the floor prior to the incident. *See Dunklin v. Winn-Dixie of Montgomery*, 595 So.2d 463 (Ala. 1992). For example, a jury is permitted to "infer the length of time from evidence that the substance is 'dirty, crumpled, or mashed, or has some other characteristic which makes it reasonable to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it.'" *Cash v. Winn-Dixie of Montgomery, Inc.*, 418 So.2d 874, 876 (Ala. 1982); *see also Williams v. Wal-Mart Stores, Inc.*, 584 F.Supp.2d 1316, 1319 (M.D. Ala. 2008).

The parties focus their attention on the quantity and nature of the liquid substance on the ground at the time of Plaintiff's fall to support their respective positions on constructive notice. (*See* Doc. #27 at 13-19; *see also* Doc. #34 at 14-17). Plaintiff's testimony on this aspect of the case is not entirely clear. She admits that she did not see any water on the floor prior to her fall,[10] yet recalls that there was ice on the floor which was pointed out to her after her fall. (Exh. A at 58).

> A: My husband said, "Look right behind her. There's ice and there's puddles of little" – "little puddles of water." And they ran and got one of those – what do you call them little cone like things? Caution, wet or something. And they went and got a mop and a bucket. I do remember all that going on.
>
> A: Just glancing around, a little bit of water, but that – that was it. ... Maybe a little – maybe like that (indicating) [the size of a coaster].
>
> A: When I glanced back – when I glanced back (indicating), I could see one little piece [of ice], but the other little water pud – water – little puddles –, I mean, it was just like a (indicating), and that's it, you know. A glance back.
>
> A: [The puddle I saw contained] some ice, but more water. Like melted.

(Exh. A at 60, 65, 66, 74; Exh. F-21). When asked whether there was a single puddle or multiple puddles, Plaintiff testified:

---

[10] *See* discussion *infra* Section IV.B. for a discussion on the open and obvious nature of the potential hazard.

13

> A: There had to be – I don't really know, but it had to be more than one because of my pants, my capris and then up here (indicating) [was wet].
>
> A: It was two or three areas (indicating) [that were wet on my capri pants after the fall], and they were white capris.

(Exh. A at 64, 73). Plaintiff testified that the liquid that she observed on the floor after her fall was clear and without any brown marks or streaks in it. (Exh. A at 73).

Taking this testimony, the parties argue their respective positions on constructive notice. Defendant Target argues that because a number of Target guests and Team Members (Kevin Patterson and Vinanatta Patterson) had traversed the same area in the minutes leading up to the fall and none mentioned or acted as if there was a spill, and because the puddle was clear, it could not have been on the floor very long such as to impart constructive notice. (*See* Doc. #27 at 14-15) (*quoting Williams*, 584 F. Supp.2d at 1230-1321) (summary judgment granted on plaintiff's negligence claim due to lack of notice, holding that "the testimony that the puddle was 'clear' and that [the plaintiff's] sister failed to notice it when she exited the store a minute earlier suggests that, if anything, the puddle had not been on the floor for very long."). Plaintiff counters that melting and melted ice are characteristics that courts consider in determining whether a substance had been on the floor long enough to impart constructive notice and that Target admits that no employees directly

14

inspected the floor for spills on the day in question.[11] (*See* Doc. #34 at 14-16) (*citing Maddox v. K-Mart Corp.*, 565 So.2d 14, 16-17 (Ala. 1990)) (holding that constructive notice could be imputed to defendant where a spilled soft drink had become sticky on the floor).

The problem for Plaintiff is that her argument for Target's constructive notice of the spill is mere conjecture that cannot create a material dispute of fact. She admits that she has no knowledge of how long the liquid might have been on the floor and she admits that she merely "assumed" that the liquid came from the ice dispenser. (Exh. A at 92-93); *see also Hale v. Kroger Ltd. Partnership I*, 28 So.3d 772, 780-781 (Ala. 2009) ("[I]t is apparent that any statement [plaintiff] made as to the actual length of time the spill existed is mere conjecture or surmise, which this court may not consider as substantial evidence in order to defeat a motion for summary

---

[11] The evidence is undisputed, however, that while there is no specific schedule for inspecting the floor in the Food Avenue area, inspections are done on an ongoing basis by Target employees. (Exh. C at 106). Specifically, in the hour prior to the fall, Kevin Patterson and Katie Crosslin walked through Food Avenue, canvassing the area as they were trained to do by Target and monitoring the floor for any spills, trash, or debris. (Exh.B, ¶¶ 5-8; Exh. C at 170-172).

That Target undertakes such "ongoing" inspection, Plaintiff argues, yet "failed" to do so, is further evidence of negligence. (*See* Doc. #34 at 23-26). The problem with this argument is that there is no evidence of any failure on the part of Target. Although there is no written evidence of a floor inspection by a third party, Crosslin testified that video showed Target Team Members walking through the area monitoring the floors, as they had been trained. On the date of the incident, Crosslin herself canvassed the area around the Food Avenue with high frequency. (Exh. C at 169-171). Video, deposition, and declaration testimony evidence that Crosslin, Kevin Patterson, Venni Patterson, and other Target employees canvassed and monitored the floor in Food Avenue on the date of the incident. (Exh. B, ¶¶ 4, 9, 10; Exh. C at 169-172; Exh. D, ¶¶ 7, 8).

judgment."). The liquid might have been spilled by a patron who was enjoying some ice water such that it's original substance was a mixture of ice and water; similarly, the liquid might have been spilled from the ice dispenser as an original substance of ice and water.[12] There is no way to know. What is known is that several individuals passed through the Food Avenue area minutes before the fall and none noticed any spills – those individuals were both patrons (including Plaintiff's husband) and employees. To charge Target with constructive notice of a spill (or spills) the size of a coaster that could not have been on the floor for more than mere minutes would be to charge Target with the responsibility of protecting its invitees from **_all_** conceivable dangers and that is quite clearly not the state of the law in Alabama. *See Ex parte Harold L. Martin Distrib. Co.*, 769 So.2d 313, 314 (Ala. 2000) (internal quotations omitted); *see also Hale*, 28 So.3d at 781-782 ("Given the absence of any evidence indicating that the size and location of the spill should have alerted [defendant] employees in the area to its presence in the relatively short period between the spill and [plaintiff's] fall . . . [plaintiff] did not present substantial evidence . . . indicating that [defendant] had constructive knowledge of the hazard.").

---

[12] For the purpose of this opinion, it is not material whether there was ice and water, or just water, on the floor in the area of the fall. (*See* Doc. #34 at 20-23). It is also not material whether the liquid came from the ice dispenser or not. (*See id.*). What is important is that Target can not be charged with constructive notice of the spill given the facts that are not in dispute.

For this reason, defendant's motion for summary judgment as to Plaintiff's negligence claim is due to be granted.

### B.    The Open and Obvious Nature of the Spill

In the alternative, defendant Target argues the affirmative defense that they are "not liable for injuries to an invitee resulting from a danger that was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." *Gable v. Shoney's Inc.*, 663 So.2d 928-929 (Ala. 1995). Target argues that it is entitled to summary judgment for the separate and additional reason that Plaintiff should have known of and avoided the hazard had she been exercising reasonable care. (*See* Doc. #27 at 19-21) (citing *Dolgencorp, Inc. v. Taylor*, 28 So.3d 737, 741-742 (Ala. 2009)).

Indeed Plaintiff testified that had she been watching the floor instead of eating her popcorn, she would have probably noticed the spill because it was "readily visible" and something that could be seen from "a little ways off." (Exh. A at 87, 226, 250). She had walked the area where she fell twice prior to her fall and noticed nothing. (Exh. A-18). Plaintiff also testified that Target cashiers working some distance away should have been able to notice the spot of liquid on the floor – if that is the case, then Plaintiff herself did not exercise sufficient care for her own safety to observe liquid on the floor that was "readily visible." *See Ex parte Neese*, 819 So.2d

584, 590 (Ala. 2001) (granting summary judgment based on the open and obvious nature of the element, where plaintiff walked over the hazard 2-3 times, failing to exercise reasonable care to appreciate the hazard).

For this separate and additional reason, Target is entitled to summary judgment on Plaintiff's negligence claim.

### C. Wantonness Claim

Plaintiff has conceded that there is no evidence of intentional or reckless conduct against Target giving rise to a claim for wantonness. (*See* Doc. #34 at 29). Accordingly, the Motion (Doc. #26) for Summary Judgment, as it relates to the wantonness claim, is due to be granted.

### V. Conclusion

For the foregoing reasons, Defendant Target Corporation's Motion (Doc. #26) for Summary Judgment is due to be granted in its entirety. A separate order will be entered dismissing this case.

**DONE** this the ___5th___ day of August, 2014.

*James W. Hancock*
_____
SENIOR UNITED STATES DISTRICT JUDGE